**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION**

EVANSTON INSURANCE COMPANY and
MARKEL AMERICAN INSURANCE COMPANY,

    Plaintiffs,

vs.

SONNY GLASBRENNER, INC. and CONE &
GRAHAM, INC.,

    Defendants.
_____/

**COMPLAINT FOR DECLARATORY RELIEF**

Plaintiffs, EVANSTON INSURANCE COMPANY ("Evanston") and MARKEL AMERICAN INSURANCE COMPANY ("MAIC") (collectively, the "Excess Insurers") file this, their Complaint for declaratory judgment against SONNY GLASBRENNER, INC. ("SGI") and CONE & GRAHAM, INC. ("Cone & Graham"), and state as follows:

1. This is an action seeking declaratory and other relief pursuant to 28 U.S.C. §§ 2201 and 2202 for the purpose of determining a question of actual controversy between the parties.

2. This Court has jurisdiction pursuant to 28 U.S.C. §1332.

3. The Excess Insurers seek a declaration that they have no obligation to defend or indemnify SGI against the claim made by Cone & Graham arising out of SGI's work on the I-275 SB Ramp to I-75 NB Bridge Redecking (the "Project") pursuant to the terms and conditions of the commercial excess liability policies issued to SGI. This includes any claim made by Cone & Graham in the action titled *In re: Sonny Glasbrenner, Inc., Assignor, to Larry S. Hyman, Assignee,* Case No. 21-003289-CI, filed in the Circuit Court of the Sixth Judicial Circuit in and for Pinellas

County, Florida (the "ABC Proceeding"). The claim made by Cone & Graham against SGI for damages related to the Project is henceforth known as the "Underlying Claim."

## THE PARTIES

4. Evanston is incorporated under the laws of the State of Illinois and has its principal place of business in Illinois. It is an insurance company authorized to do business in the State of Florida and elsewhere. At all times material hereto, Evanston is and was a citizen of Illinois.

5. MAIC is incorporated under the laws of the State of Virginia and has its principal place of business in Virginia. It is an insurance company authorized to do business in the State of Florida and elsewhere. At all times material hereto, MAIC is and was a citizen of Virginia.

6. According to the Underlying Claim and upon information and belief, SGI is a Florida for-profit corporation, authorized and licensed to do business in the State of Florida. SGI has its principal place of business in the State of Florida. Thus, SGI is a citizen of Florida.[1]

7. According to the Amended Proof of Claim filed by Cone & Graham in the ABC Proceeding and upon information and belief, Cone & Graham is and was a Florida for-profit corporation, authorized and licensed to do business in the State of Florida. **The Amended Proof of Claim is attached hereto at Exhibit A.** Cone & Graham's principal place of business is in Florida. Thus, at all times material hereto, Defendant, Cone & Graham, is and was a citizen of Florida.

8. In accordance with the foregoing and 28 U.S.C. §1332, there is complete diversity between Plaintiffs and Defendants.

---

[1] Pursuant to records kept by the Florida Department of Corporations, SGI is presently administratively dissolved.

## JURISDICTION AND VENUE

9. This Court has subject matter jurisdiction over this action for declaratory relief pursuant to 28 U.S.C. § 1332(a)(1), 28 U.S.C. §§ 2201 and 2202 and Rule 57 of the Federal Rules of Civil Procedure.

10. An actual justiciable controversy between the Excess Insurers and Defendants exists within the meaning of 28 U.S.C. § 2201 regarding the parties' rights and obligations under the applicable insurance policies with respect to the allegations made in the Underlying Claim.

11. The Underlying Claim seeks monetary damages of $2,854,275.70; therefore, this Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332(a)(1) because the amount in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs, and the suit is between citizens of different states.

12. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 in that a substantial part of the events or omissions giving rise to this claim occurred in Pinellas County, Florida, which is within this district. The ABC Proceeding in which the Amended Proof of Claim is at issue is also venued in Pinellas County, Florida.

## THE FACTS
### The Underlying Claim

13. This action arises out of work performed by SGI during SGI's demolition of the I-275 Ramp D connector bridge contracted by Cone & Graham.

14. In a November 13, 2020 demand from counsel for Cone & Graham, Cone & Graham alleges that the bridge was being rehabilitated due to the deterioration of the existing concrete bridge deck and that additional cross bracing was used to stiffen the steel girders in order to meet current design standards and load rating requirements. **The November 13, 2020 Demand is attached hereto at Exhibit B.**

15. The demolition of the existing concrete bridge deck was subcontracted to SGI by Cone & Graham. *See* **Subcontract Agreement between SGI and Cone & Graham attached at Exhibit C.**

16. Cone & Graham alleges that SGI was negligent in performing its demolition work on the Project, causing damage to the existing girders. Ex. B at p. 1.

17. The Florida Department of Transportation ("FDOT"), the bridge owner, allegedly required substantial repairs as a result of SGI's negligent performance of the demolition work on the Project. Ex. B at p. 1.

18. These repairs include the costs of restoring the damaged beams to the original capacity that existed prior to SGI's work on the Project. Ex. B at p. 2.

19. On July 2, 2021, a Petition was filed commencing an Assignment for the Benefit of Creditors, pursuant to Chapter 727, *Fla. Stat.*, by SGI as Assignor, to Larry S. Hyman, Assignee, in the Circuit Court of Pinellas County, Florida.

20. An Amended Proof of Claim was filed in the ABC Proceeding by Cone & Graham on October 6, 2021. *See* Exhibit A.

21. Cone & Graham's Amended Proof of Claim provides that "[d]uring the course of SGI's work on the Project, SGI personnel, while saw-cutting concrete decks, negligently failed to continuously and properly monitor the extension of the concrete saw blade. As a direct and proximate result of SGI's negligence and/or breach of contract, SGI cut into existing beams or girders, existing spliced plates, and structural bolts on the Project, causing substantial property damage to the Project." Ex. A at ¶ 4.

22. Cone & Graham further claims that "[t]he damaged beams and girders, spliced plates, and structural bolts were <u>not</u> part of the property which was the object of SGI's contracted-

for work on the Project and were outside the scope of SGI's contracted-for work on the Project." Ex. A at ¶ 5.

23. Cone & Graham claims that it sustained $2,854,275.70 in monetary damages as a result of the foregoing. *Id.* at ¶ 7.

24. The subcontract between Cone & Graham and SGI provides the scope of the demolition work to be performed by SGI in connection with the Project. This includes the selective demolition of the bridge surface, saw cutting and removing the bridge concrete deck, saw cutting and removing the traffic railing, and jackhammering any remaining portions of the concrete deck of the bridge. **Exhibit C**.

25. Upon information and belief, SGI performed work on the Project beginning August 1, 2018, and completed operations in December 2018.

## The Policies

26. Evanston issued Commercial Excess Liability Policy No. MKLV2EUL102408, which provides certain excess coverage to SGI during the effective dates of April 20, 2018 to April 20, 2019 (the "Evanston Policy"). **A redacted copy of the Evanston Policy is attached hereto at Exhibit D.**

27. The Evanston Policy provides limits of $5,000,000 for Each Occurrence, with $5,000,000 General Aggregate limits, excess of $1,000,000 limits of liability insurance provided by Everest Denali Insurance Company ("Everest") via policy No. CF3GL00085-181 as scheduled underlying insurance.

28. The Evanston Policy provides that Evanston "[w]ill pay those sums in excess of the limits shown in the Schedule Of Underlying Insurance that you become legally obligated to pay as damages because of injury to which this insurance applies, provided that the 'underlying

insurance' also applies, or would apply but for the exhaustion of its applicable Limits of Insurance." Ex. D at p. 10.

29. The Evanston Policy provides:

> *We will have the right to participate in the defense of claims or suits against you seeking damages because of injury to which this insurance may apply. We will have a duty to defend such claims or suits when the applicable limit of insurance of the "underlying insurance" has been exhausted by payment of judgments, settlements and any cost or expense subject to such limit. We may, at our discretion, investigate and settle any claim or suit. Our right and duty to defend ends when the applicable limit shown in the Declaration has been used up by our payment of judgments or settlements.*

30. The Evanston Policy is subject to the same terms, conditions, agreements, exclusions and definitions as the "underlying insurance", except that Evanston will have no obligation with respect to any claim or suit that is settled without Evanston's consent and with respect to any provisions to the contrary contained in the Evanston Policy. Ex. D at p. 10.

31. The Evanston Policy provides that "[t]his insurance will respond to injury or damage that occurs, or arises from an offense committed, during the Policy Period shown in the Declarations." *Id.* at p. 11.

32. The Evanston Policy is endorsed to include a Contractor's Services Exclusion that adds to Section II. Exclusions such that the insurance does not apply to:

> ***Damage To Property***
> *Property damage to:*
> ***a.***   *Any property or equipment rented, leased or loaned to any insured;*
> ***b.***   *Property being installed or erected by or for any insured; or*
> ***c.***   *That particular part of real property on which work is being performed by or for any insured.*
> \*   \*   \*

33. The Evanston Policy provides that SGI must maintain the "underlying insurance" in full force and effect during the term of the policy. Failure to maintain the "underlying insurance"

6

in full force and effect will not invalidate the Evanston Policy, but the insurance provided under the Evanston Policy shall apply as if the "underlying insurance" were available and collectible. *Id.* at p. 11.

34. The Evanston Policy contains a "Non-Drop Down Provision" endorsement, which provides that "[t]he aggregate limits on 'underlying insurance' shall not be reduced as respects coverage excluded hereunder." *Id.* at p. 13.

35. MAIC issued Commercial Excess Liability Policy No. MKLM2EUL100175, which provides certain excess coverage to SGI during the effective dates of April 20, 2019 to April 20, 2020 (the "MAIC Policy"). **A redacted copy of the MAIC Policy is attached hereto at Exhibit E**. Collectively, the Evanston Policy and the MAIC Policy are referred to as the "Excess Policies".

36. The MAIC Policy provides limits of $5,000,000 for Each Occurrence, with $5,000,000 General Aggregate limits, excess to $1,000,000 limits of liability insurance provided by Everest policy No. CF3GL0005191 as scheduled underlying insurance.

37. The MAIC Policy provides that MAIC "[w]ill pay those sums in excess of the limits shown in the Schedule Of Underlying Insurance that you become legally obligated to pay as damages because of injury to which this insurance applies, provided that the 'underlying insurance' also applies, or would apply but for the exhaustion of its applicable Limits of Insurance." Ex. E at p. 10.

38. The MAIC Policy provides:

> *We will have the right to participate in the defense of claims or suits against you seeking damages because of injury to which this insurance may apply. We will have a duty to defend such claims or suits when the applicable limit of insurance of the "underlying insurance" has been exhausted by payment of judgments, settlements and any cost or expense subject to such limit. We may, at our discretion, investigate and settle any claim or suit. Our right*

> *and duty to defend ends when the applicable limit shown in the Declaration has been used up by our payment of judgments or settlements.*

Ex. E at p. 10.

39. The MAIC Policy is subject to the same terms, conditions, agreements, exclusions and definitions as the "underlying insurance", except that MAIC will have no obligation with respect to any claim or suit that is settled without MAIC's consent and with respect to any provisions to the contrary contained in the MAIC Policy. Ex. E at p. 10.

40. The MAIC Policy provides that "[t]his insurance will respond to injury or damage that occurs, or arises from an offense committed, during the Policy Period shown in the Declarations." Ex. E at p. 11.

41. The MAIC Policy is endorsed to include an Exclusion-Prior Incidents and Prior Construction Defects that provides:

> *The following is added to the Exclusions section:*
> *This policy does not apply to:*
>
> ***Prior Incidents And Prior Construction Defects***
>
> *Loss, cost or expense arising from a claim which first occurred or is alleged to have begun to occur prior to the effective date of this policy. This exclusion applies regardless of whether repeated or continued exposure to conditions which were a cause of such loss, cost or expense occur during the period of this policy and cause additional, progressive or further loss, cost or expense, all of which are excluded from coverage.*
>
> *This exclusion shall apply whether or not the insured's legal obligation to pay damages has been established as of the inception date of this policy. If this policy is renewed or extended by us for more than one annual period, the most we will pay for loss, cost or expense arising from a claim which first occurred during one of the policy periods is the applicable limit of insurance available for the policy period during which the injury or damage first occurred, regardless of whether such injury or exposure to it existed before or continues after the policy period in which it first occurred.*
> \*  \*  \*

Ex. E at p.13.

42. The MAIC Policy also contains the Exclusion-Damage to Property, which provides that there is no coverage for property damage to "[r]eal or personal property in the care, custody or control of any insured (as respects real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, only excluding property damage to that particular part of real property on which operations are being performed, if the property damage arises out of those operations)". Ex. E at p. 21.

43. According to the MAIC Policy, SGI must maintain the "underlying insurance" in full force and effect during the term of the policy. Failure to maintain the "underlying insurance" in full force and effect will not invalidate the MAIC Policy, but the insurance provided under the MAIC Policy shall apply as if the "underlying insurance" were available and collectible. Ex. E at p. 11.

44. The MAIC Policy contains a "Non-Drop Down Provision" endorsement, which provides that "[t]he aggregate limits on 'underlying insurance' shall not be reduced as respects coverage excluded hereunder." Ex. E at p. 12.

45. Everest issued a commercial general liability policy to SGI, Policy No. CFG3L00085181 (the "18-19 Everest Policy") for the policy period of April 20, 2018 to April 20, 2019. **Upon information and belief, a true and correct copy of the 18-19 Everest Policy is attached hereto at Exhibit F**.

46. The 18-19 Everest Policy provides General Aggregate Limits of insurance of $2,000,000, and Each Occurrence Limits of $1,000,000.

47. The 18-19 Everest Policy contains the following Insuring Agreement (CG 00 01 04 13):

> **SECTION I COVERAGES**
> **COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY**
> **1.      Insuring Agreement**
> **a.**      We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply.
>
> *     *     *

48.     The 18-19 Everest Policy defines "property damage" in relevant part as:

> **a.**   Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or
>
> **b.**   Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.
>
> *     *     *

49.     The 18-19 Everest Policy contains the following exclusions:

> **2.      Exclusions**
>
> This insurance does not apply to:
>
> [...]
>
> **j.      Damage to Property**
>
> "Property damage" to:
>
> **(5)**     That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or
> **(6)**     That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.
>
> *     *     *

Ex. F at p. 21.

50.     Everest also issued commercial general liability insurance policy No. CF3GL0005191, which is scheduled as underlying insurance to the MAIC Policy, and upon

information and belief provides certain primary coverage for the policy period of April 20, 2019 to April 20, 2020, with limits of $1,000,000 for Each Occurrence, and General Aggregate Limits of $2,000,000.[2]

51. The Court in the ABC Proceeding has not and is not expected to rule on the coverage issues detailed herein.

52. There is a real and actual case or controversy between Evanston, MAIC, SGI, and Cone & Graham, and adjudication of this matter would serve a useful purpose. SGI and Cone & Graham have asserted that there is coverage under the Excess Policies based on the allegations in the Underlying Claim. Evanston and MAIC dispute that coverage exists for the Underlying Claim under the Excess Policies.

## COUNT I – DECLARATORY RELIEF
### NO DUTY TO DEFEND UNDER THE EVANSTON POLICY
(AGAINST ALL DEFENDANTS)

53. Evanston incorporates preceding paragraphs 1 through 52 as though fully restated herein.

54. In accordance with the terms of the Evanston Policy's insuring agreement, Evanston will only pay those sums in excess of the limits shown in the Schedule of Underlying Insurance that SGI becomes legally obligated to pay as damages because of injury to which the Evanston Policy applies or would apply but for the exhaustion of the applicable limits of insurance of the underlying policy.

55. Further according to the insuring agreement, Evanston only has a duty to defend covered claims or suits when the applicable limit of insurance of the "underlying insurance" has

---

[2] Evanston and MAIC do not have a copy of this Policy in their possession. Upon information and believe, Everest policy No. CF3GL0005191 contains the same material terms, conditions, definitions and exclusions as the 18-19 Everest Policy.

11

been exhausted by payment of judgments, settlements and any cost or expense subject to such limit. Evanston's right and duty to defend ends when the applicable limit shown in the Declarations has been used up by payment of covered judgments or settlements.

56. The Everest Policy is scheduled as underlying insurance to the Evanston Policy.

57. The limits of the Everest Policy have not been exhausted.

58. Accordingly, coverage under the Evanston Policy has not yet been triggered, including any obligation to defend SGI in connection with the Underlying Claim.

59. Further, even in the event the "underlying insurance" becomes properly exhausted, Cone & Graham claims it has suffered monetary damages with respect to cut beams and girders, spliced plates, and damaged structural bolts allegedly arising during work performed by SGI on the Project.

60. Cone & Graham does not make a claim for "property damage" as defined by the Everest Policy and incorporated by the Evanston Policy and Florida law.

61. Alternatively, to the extent any of the damage claimed by Cone & Graham is considered "property damage" under the terms of the Evanston Policy and Florida law, the Evanston Policy does not provide insurance for damage to property being installed or erected by or for any insured, or to that particular part of real property on which work is being performed by or for any insured.

62. SGI was hired to perform operations on the surface of the bridge, including saw cutting and removing the bridge deck and railing pursuant to the Subcontract.

63. While SGI was performing operations Cone & Graham alleged that SGI cut into existing beams or girders, spliced plates, and structural bolts on the bridge. Ex. A at ¶¶ 4-5.

64. As Cone & Graham solely seeks damage for property (a) being installed or erected by or for any insured; and/or (b) to that particular part of real property on which work is being performed by or for any insured (including any putative additional insureds), there is no coverage for the Underlying Claim under the Evanston Policy in accordance with the "Damage to Property" exclusion within the "Exclusion-Contractor's Services" endorsement.

65. There is also no coverage under the Evanston Policy pursuant to Exclusion j(5) of the underlying Everest Policy as any "property damage" is alleged to arise out of SGI's operations to that particular part of real property on which SGI or any contractors or subcontractors working directly or indirectly on its behalf.

66. Exclusion j(6) of the Everest Policy further precludes coverage for the Underlying Claim as any damage is alleged to arise out of SGI's operations to that particular part of real property that must be restored, repaired or replaced because SGI's work was incorrectly performed on it.

67. Therefore, Evanston has no duty to defend SGI in connection with the Underlying Claim pursuant to the "Exclusion-Contractor's Services" endorsement, and Exclusions j(5) and j(6) of the underlying Everest Policy.

WHEREFORE, pursuant to 28 U.S.C. §§ 2201 and 2202, Evanston respectfully prays for the following relief:

    A.    Taking jurisdiction of this matter;

    B.    A declaration that Evanston has no duty to defend SGI with respect to the Underlying Claim in accordance with the insuring agreement of the Evanston Policy;

  C.  A declaration that coverage for the Underlying Claim under the Evanston Policy is precluded by the "Damage to Property" exclusion within the "Exclusion-Contractor's Services" endorsement;

  D.  A declaration that Exclusions j(5) and j(6) of the underlying Everest policy also precludes coverage for the Underlying Claim under the Evanston Policy; and

  E.  For such other and further relief as this Court deems just and proper.

**COUNT II – DECLARATORY RELIEF**
**<u>NO DUTY TO INDEMNIFY UNDER THE EVANSTON POLICY</u>**
**(AGAINST ALL DEFENDANTS)**

  68.  Evanston incorporates preceding paragraphs 1 through 52 as though fully restated herein.

  69.  SGI has not been determined to be legally obligated to pay any sums for covered claims in excess of the $1,000,000 limits of the scheduled underlying insurance; therefore, Evanston has no duty to indemnify the Underlying Claim under the Evanston Policy.

  70.  The underlying limits of $1,000,000 provided by the Everest Policy have not yet been paid for covered claims; therefore, Evanston has no duty to indemnify the Underlying Claim under the Evanston Policy.

  71.  Further, the claim made by Cone & Graham does not trigger the Evanston Policy's insuring agreement as it does not allege "property damage" as defined by the policy and Florida law.

  72.  In addition, based on the allegations made by Cone & Graham in the Demand and Amended Proof of Claim and the plain language of the "Damage to Property" exclusion within the "Exclusion-Contractor's Services" endorsement, Evanston has no duty to indemnify SGI with respect to the Underlying Claim.

73. Based on the allegations made by Cone & Graham in the Demand and Amended Proof of Claim and the plain language of Exclusions j(5) and j(6) in the underlying Everest Policy, Evanston has no duty to indemnify SGI with respect to the Underlying Claim.

74. Because there is no coverage for the Underlying Claim under the Evanston Policy for the reasons set forth above and in Count I, Evanston has no duty to indemnify any sums SGI may become legally obligated to pay as damages to Cone & Graham.

WHEREFORE, pursuant to 28 U.S.C. §§ 2201 and 2202, Evanston respectfully requests that this Court enter judgment in its favor as follows:

A. Taking jurisdiction of this matter;

B. A declaration that Evanston has no duty to indemnify SGI for the allegations of the Underlying Claim; and

C. For such other and further relief as this Court deems just and proper.

## COUNT III – DECLARATORY RELIEF
## <u>NO DUTY TO DEFEND UNDER THE MAIC POLICY</u>
### (AGAINST ALL DEFENDANTS)

75. MAIC incorporates preceding paragraphs 1 through 52 as though fully restated herein.

76. The MAIC Policy only provides insurance for injury or damage that occurs or arises from an offense committed during the Policy Period of April 20, 2019 to April 20, 2020.

77. There is no allegation by Cone & Graham of any injury or damage that occurred or arose from an offense committed during the MAIC Policy Period. Thus, the MAIC Policy's insuring agreement is not triggered by the Underlying Claim and MAIC has no duty to defend SGI with respect to Cone & Graham's allegations.

78. Further, coverage under the MAIC Policy, including any duty to defend, is only potentially available once the applicable limit of insurance of the "underlying insurance" provided by Everest policy No. CF3GL0005191 has been exhausted by payment of covered judgments, settlements and any cost or expense subject to such limit.

79. There has been no exhaustion of the Everest policy No. CF3GL0005191 in connection with the Underlying Claim; thus, the MAIC Policy's insuring agreement is not triggered by the Underlying Claim and MAIC has no duty to defend SGI with respect to Cone & Graham's allegations.

80. Additionally, even in the event the applicable limits of insurance of the "underlying insurance" are properly exhausted, Cone & Graham alleges that SGI was hired to perform operations on the surface of the bridge, including saw cutting and removing the bridge deck and railing and while performing such operations SGI cut into existing beams or girders, spliced plates, and structural bolts on the bridge. Ex. A at ¶¶ 4-5.

81. Damage to the bridge's existing beams, girders, spliced plates, and structural bolts is not "property damage" under the MAIC Policy and Florida law and do not trigger the MAIC Policy's insuring agreement; therefore, Evanston has no duty to defend SGI in connection with the Underlying Claim.

82. Alternatively, the MAIC Policy provides that there is no coverage for property damage to "[r]eal or personal property in the care, custody or control of any insured (as respects real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, only excluding property damage to that particular part of real property on which operations are being performed, if the property damage arises out of those operations)".

83. To the extent any damage claimed by Cone & Graham is considered "property damage" under the terms of the MAIC Policy and Florida law, coverage for such damage is excluded by the MAIC Policy's Exclusion-Damage to Property as any damage alleged in the Underlying Claim is to real property in the care, custody or control of SGI.

84. Further, Cone & Graham claims it has suffered damages for loss, cost or expense arising from SGI's work that first occurred or began to occur prior to April 20, 2019, the effective date of the MAIC Policy; therefore, MAIC has no duty to defend the Underlying Claim pursuant to the MAIC Policy's Exclusion-Prior Incidents and Prior Construction Defects endorsement.

WHEREFORE, pursuant to 28 U.S.C. §§ 2201 and 2202, MAIC respectfully prays for the following relief:

A. Taking jurisdiction of this matter;

B. A declaration that MAIC has no duty to defend SGI with respect to the Underlying Claim in accordance with the insuring agreement of the MAIC Policy;

C. A declaration that coverage for the Underlying Claim under the MAIC Policy is precluded by the MAIC Policy's Exclusion-Damage to Property;

D. A declaration that coverage for the Underlying Claim under the MAIC Policy is excluded by the MAIC Policy's Exclusion-Prior Incidents and Prior Construction Defects endorsement; and

E. For such other and further relief as this Court deems just and proper.

## COUNT IV – DECLARATORY RELIEF
### NO DUTY TO INDEMNIFY UNDER THE MAIC POLICY
### (AGAINST ALL DEFENDANTS)

85. MAIC incorporates preceding paragraphs 1 through 52 as though fully restated herein.

86. The Underlying Claim fails to trigger the MAIC Policy's insuring agreement as there are no allegations of any injury or damage that occurred or arose from an offense committed during the Policy Period.

87. The MAIC Policy's insuring agreement also has not been triggered by the Underlying Claim as there has been no exhaustion of the scheduled underlying insurance provided by Everest policy No. CF3GL0005191.

88. Additionally, the Demand by Cone & Graham does not allege "property damage" as defined by the MAIC Policy and Florida law; therefore, MAIC has no duty to indemnify the Underlying Claim.

89. MAIC also has no duty to indemnify the Underlying Claim pursuant to the MAIC Policy's Damage to Property and Prior Incidents and Prior Construction Defects exclusions.

90. Because there is no coverage for the Underlying Claim under the MAIC Policy for the reasons set forth above and in Count III, MAIC has no duty to indemnify any sums SGI may become legally obligated to pay as damages to Cone & Graham.

WHEREFORE, pursuant to 28 U.S.C. §§ 2201 and 2202, MAIC respectfully prays for the following relief:

A. Taking jurisdiction of this matter;

B. A declaration that MAIC has no duty to indemnify SGI for the allegations of the Underlying Claim; and

C. For such other and further relief as this Court deems just and proper.

## **DEMAND FOR JURY TRIAL**

Evanston and MAIC demand a trial by jury on all claims and defenses so triable.

DATED this 2nd day of February, 2022.

        Respectfully submitted,

        **LEWIS BRISBOIS BISGAARD & SMITH LLP**
*Counsel for Evanston Insurance Company and Markel American Insurance Company*
110 SE 6th Street, Suite 2600
Fort Lauderdale, FL 33301
Telephone: 954.728.1280
Facsimile: 954.728.1282

By: */s/ Kristen D. Perkins*
**KRISTEN D. PERKINS, ESQ.**
Florida Bar No. 611816
Kristen.Perkins@lewisbrisbois.com
**JORDAN H. LEWIS, ESQ.**
Florida Bar No. 123592
Jordan.Lewis@LewisBrisbois.com
Secondary: Tracy.Gowen@lewisbrisbois.com