UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**EVANSTON INSURANCE COMPANY and MARKEL AMERICAN INSURANCE COMPANY,**

   Plaintiffs,

v.                                                     Case No: 8:22-cv-00287-MSS-AEP

**SONNY GLASBRENNER, INC., and CONE & GRAHAM, INC.,**

   Defendants.

## ORDER

**THIS CAUSE** comes before the Court for consideration of Plaintiff Evanston Insurance Company's ("Plaintiff" or "Evanston") Motion for Judgment on the Pleadings, (Dkt. 45), Defendants' response in opposition, (Dkt. 54), and Plaintiff's reply in support. (Dkt. 109) On October 20, 2023, United States Magistrate Judge Anthony E. Porcelli issued a Report and Recommendation, which recommended that Plaintiff's Motion for Judgment on the Pleadings be **DENIED**. (Dkt. 118) Plaintiff timely filed an objection to Judge Porcelli's Report and Recommendation. (Dkt. 119)

In the Eleventh Circuit, a district judge may accept, reject, or modify the magistrate judge's report and recommendation after conducting a careful and complete review of the findings and recommendations. 28 U.S.C. § 636(b)(1); Williams v.

Wainwright, 681 F.2d 732, 732 (11th Cir. 1982). A district judge "shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(C). This requires that the district judge "give fresh consideration to those issues to which specific objection has been made by a party." Jeffrey S. v. State Bd. of Educ., 896 F.2d 507, 512 (11th Cir.1990) (quoting H.R. 1609, 94th Cong. § 2 (1976)). In the absence of specific objections, there is no requirement that a district judge review factual findings *de novo,* Garvey v. Vaughn, 993 F.2d 776, 779 n.9 (11th Cir. 1993), and the court may accept, reject, or modify, in whole or in part, the findings and recommendations. 28 U.S.C. § 636(b)(1)(C). The district judge reviews legal conclusions *de novo,* even in the absence of an objection. See Cooper-Houston v. Southern Ry., 37 F.3d 603, 604 (11th Cir. 1994).

Plaintiff raises two principal objections to Judge Porcelli's Report and Recommendation. Plaintiff's first objection is to Judge Porcelli's finding that Plaintiff was not entitled to a judgment on the pleadings that the j(5) and j(6) exclusions of the Everest Policy bar coverage for damage to the bridge's beams and girders. Specifically, Plaintiff believes Judge Porcelli misapplied case law interpreting the scope of the j(5) and j(6) exclusions. Plaintiff contends that "that particular part of real property" on which Defendant SGI was performing operations or work, was "that part of the bridge on which it was performing operations,"[1] including the girders and beams below the

---

[1] The Court notes that, in this case, "no difference exists between the meaning of 'operations' in Section (j)(5) and the meaning of 'work' in Section (j)(6)." Essex Ins. Co. v. Kart Const., Inc., No. 14–

2

bridge's concrete deck. (Dkt. 119 at 2; Dkt. 118 at 21) Judge Porcelli found, consistent with the case law, that "that particular part of real property" on which Defendant SGI was performing operations was the concrete deck only.

This Court agrees with Judge Porcelli's interpretation of the cases, and finds the cases support the conclusion that the j(5) and j(6) exclusions do not bar coverage for the damaged beams and girders. The case law supports the following precept: if an insured's performance of operations or work on a particular piece of real property causes damage to that piece of property, whether or not the work or the property was within the expressly contracted scope of the insured's work, the j(5) and j(6) exclusions bar coverage for the damage to that particular piece of property. See Cincinnati Specialty Underwriters Ins. Co. v. KNS Grp., LLC, 561 F. Supp. 3d 1298, 1308 (S.D. Fla. 2021), aff'd, 2022 WL 5238711 (11th Cir. Oct. 6, 2022) (quoting Essex Ins. Co. v. Kart Const., Inc., No. 14–cv–356, 2015 WL 4730540, at *5 (M.D. Fla. Aug. 10, 2015)) ("'[T]he dispositive issue is the "operations" that [the insured] performed at the moment of the accident, not the tasks that the contract explicitly contemplates.'"); Wilshire Ins. Co. v. Birch Crest Apts., Inc., 69 So. 3d 975, 976–77 (Fla. 4th DCA 2011) (finding the insured painter was performing work on glass windows when the insured was cleaning paint spatter off of them, therefore, j(5) and j(6) excluded coverage for damage to the glass that resulted from the insured's cleaning). But if the insured's work

---

cv–356, 2015 WL 4730540, at *6 (M.D. Fla. Aug. 10, 2015) (noting the difference between the two exclusions is that "work" under (j)(6), unlike "operations" under j(5), "need not occur at a specific time (e.g., the moment of the accident) for the exclusion to apply").

or operations cause damage to property on which the insured was not working when the damage occurred, the damage is not excluded from coverage. See Am. Equity Ins. Co. v. Van Ginhoven, 788 So. 2d 388, 391 (Fla. 5th DCA 2001) (finding coverage barred for damage to the pool because the insured was draining the pool when it was damaged, but not barred for damage to other parts of the property (the pump, heating system, deck, screen enclosure, and the surrounding landscaping and sprinkler system) because the insured was not working on them); Essex, 2015 WL 4730540, at *6 (finding (j)(5) only excluded coverage for damage to a 10-foot portion of a 127-foot tower because the insured was operating only on the 10-foot portion at the time the accident caused the damage); Amerisure Mut. Ins. Co. v. Am. Cutting & Drilling Co., No. 08-60967-CIV, 2009 WL 700246, at *5 (S.D. Fla. Mar. 17, 2009) (finding j(5) excluded coverage for damage to a cable because the cable was embedded within the concrete floor on which the defendant was performing operations when the damage occurred; "that particular part of real property" was the concrete floor, including the embedded cable).

    The Court also finds the cases on which Plaintiff relies to support its objection are distinguishable from this case. For example, Plaintiff asserts that Welfle, Inc. v. Motorist Ins. Grp., No. 06CA0063, 2007 WL 1174652 (Ct. App. Oh. Apr. 23, 2007) "could not be more on point." (Dkt. 119 at 13) In that case, the insured was instructed to remove asphalt from a bridge's concrete deck. Id. at *1. To do so, the insured used a machine that "grinds the asphalt . . . being removed." Id. The insured set the machine to grind too deeply, which caused the machine to cut into and damage the concrete

4

deck. Id. To decide whether "that particular part of real property" on which the insured was performing operations was the concrete deck or only the asphalt, the Welfle court analogized its case to one very similar to Wilshire Ins. Co. v. Birch Crest Apts., Inc., 69 So. 3d 975 (Fla. 4th DCA 2011), decided by the Rhode Island Supreme Court:

> If a painting contractor misuses a scraper while using it to remove paint or other material from window panes thereby damaging the panes, it has incorrectly performed work on the panes and coverage for the cost of their repair is excluded by the j(6) exclusion. In this case, Welfle misused its rotomill while using it to remove asphalt from the bridge deck thereby damaging the bridge deck. Accordingly, it damaged the bridge deck while working on it, and the cost of repairing the bridge deck is excluded by the j(6) exclusion.

Welfle, 2007 WL 1174652, at *3. The Welfie court's analogy does not fit the facts of this case. In Welfle and Wilshire, the insureds intended to work on a surface, necessarily making contact with it, to remove something adhered to the surface without damaging the surface. Here, as Judge Porcelli noted, it is not undisputed on the face of the pleadings that Defendant SGI was tasked with removing something adhered to the girders or beams, like paint on a windowpane or asphalt on a bridge deck. (Dkt. 118 at 21) Plaintiff's analogy to Welfle and Wilshire is inapposite for this reason.

      To reject Judge Porcelli's Report and Recommendation, this Court would have to conclude Defendant SGI was "performing operations" on not only the bridge deck, but also the beams and girders beneath it, when Defendant SGI undisputedly breached the terms of its contract and sawed past the concrete deck and into the girders. Plaintiff does not allege Defendant SGI intended to saw beyond the bridge deck. Indeed, Plaintiff alleges in the Complaint, "SGI personnel, **while saw-cutting concrete decks**,

5

negligently failed to . . . monitor the . . . concrete saw blade[.]" (Dkt. 1 at ¶ 21) As a result, "SGI cut into existing beams or girders, . . . causing substantial property damage[.]" (Id.) The Court is unpersuaded Defendant SGI was performing operations or work on the girders within the meanings of j(5) or j(6) when, due to SGI's alleged negligence, its saw cut below the bridge deck and made contact with the girders. Cf. Wilshire, 69 So. 3d at 975–76 (holding j(6) barred coverage for damage to glass resulting from the insured's negligent yet intentional cleaning of spattered paint from glass windows). Accordingly, Plaintiff's first objection is **OVERRULED**.

Plaintiff's second objection is based on Plaintiff's contention that Judge Porcelli ignored the Evanston policy's exclusion regarding property damage, which Plaintiff argues is broader than the exclusions in j(5) and j(6). The Evanston policy exclusion for property damage bars coverage for property damage to "[t]hat particular part of real property on which work is being performed by . . . any insured." (Dkt. 1-1 at 15) Plaintiff gives the Court no reason to interpret this exclusion as barring coverage for damage to the girders and beams given the Court's finding that Defendant SGI was not working on the girders or beams. Therefore, Plaintiff's second objection is **OVERRULED**.

Upon consideration of the Report and Recommendation, in conjunction with an independent examination of the file, the Court is of the opinion that the Report and Recommendation should be adopted, confirmed, and approved in all respects.

Accordingly, it is **ORDERED** that:

1. The Report and Recommendation, (Dkt. 118), is **CONFIRMED** and **ADOPTED** as part of this Order; and

2. Plaintiff's Motion for Judgment on the Pleadings, (Dkt. 45), is **DENIED**.

**DONE** and **ORDERED** in Tampa, Florida, this 15th day of March 2024.

**TOM BARBER**
**UNITED STATES DISTRICT JUDGE**[*]

**Copies furnished to:**
Counsel of Record
Any Unrepresented Person

---

[*] Signed by Judge Tom Barber to expedite resolution. This case remains assigned to Judge Mary S. Scriven.